UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALFONSO ESPARZA,<br><br>Defendant. | No. 1:16-cr-00122-DAD-BAM<br><br>ORDER DENYING WITHOUT PREJUDICE DEFENDANT ALFONSO ESPARZA'S EMERGENCY MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 368) |

Pending before the court is defendant Alfonso Esparza's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is based upon the risks to defendant posed by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 368.) For the reasons explained below, defendant's motion will be denied without prejudice.

**BACKGROUND**

On March 25, 2019, following his plea of guilty to conspiracy to distribute and possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 846, the court sentenced defendant Alfonso Esparza to 120 months imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 60-month term of supervised release. (Doc. No. 337, 339.) The court also imposed the mandatory $100 special assessment. (Doc. No. 339.)

1

Defendant is currently serving his sentence at Federal Correctional Institution, Danbury ("FCI Danbury"). (*See* Doc. No. 368 at 2.) At the time he filed his motion, defendant had served only approximately 13 months of his sentence. (*Id.* at 2.)

On April 30, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (*Id.*) On May 21, 2020, the government filed its opposition to the motion, and on June 4, 2020, defendant filed his reply thereto. (Doc. Nos. 370, 374.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

       (i)      extraordinary and compelling reasons warrant such a reduction; or

       (ii)     the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . ..

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also*

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

*United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp. 3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). While the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

As an initial matter, defendant Esparza failed to exhaust his administrative remedies with the BOP before filing the pending motion on April 30, 2020. Defendant states that he filed his petition with the warden requesting modification of his sentence on April 1, 2020 but has yet to receive a response. (Doc. No. 368 at 4.) He asserts that the exhaustion requirement should be excused as futile in his case because BOP's normal administrative process takes at least 30 days and can go on much longer given the national public health emergency. (*Id.* at 4–5.) The government contends, however, that defendant had not submitted a request for compassionate release to the warden at the time he filed his motion with the court. (Doc. No. 370 at 13; *see also* Doc. No. 370-1, Ex. 2.) Rather, defendant's request came weeks later when, on May 13, 2020, he sent an email to the warden seeking compassionate release. (Doc. Nos. 370 at 13; 370-1, Ex. 3.) Assuming the warden did not reply, defendant's motion would not have properly been before this court until June 12, 2020. (Doc. No. 370 at 14.) Five days after defendant filed his petition, however, the warden did reply, denying the request and explaining that there was no evidence of defendant suffering from any debilitating medical condition, an inability to "self-carry medication," or a condition that confined defendant to a chair or bed for more than 50 percent of his waking hours. (*Id.*; Doc. No. 370-1, Ex. 4.)[4]

As the COVID-19 virus continues to spread, district courts across the country have been presented with the question of whether § 3582(c)(1)(A)'s administrative exhaustion provision for defendants seeking to bring compassionate release motions in federal court can be excused.

---

[4] Defendant has presented no evidence of, or even made mention of, pursuing an administrative appeal from the Warden's denial of his request to the BOP's Regional Director as required under 28 C.F.R. § 542.15(a). *See* above note 2. Nonetheless the court will address the motion on its merits despite any failure to exhaust.

Some court have found that it can be, *see, e.g.*, *United States v. Connell*, __ F. Supp. 3d __, 2020 WL 2315858 (N.D. Cal. May 8, 2020), while others have held that the exhaustion requirement is jurisdictional and cannot be excused under any circumstances, *see, e.g.*, *United States v. Meron*, No. 2:18-cr-0209-KJM, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020).  For the purposes of resolving the pending motion, however, this court need not resolve this issue.  As discussed below, the court finds that the pending motion for compassionate release fails to establish extraordinary and compelling reasons warranting defendant Esparza's release.  Moreover, even if the pending motion did establish such extraordinary and compelling reasons, the court further finds that the requested reduction in defendant's sentence would be inconsistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

Accordingly, the court declines to address whether defendant has satisfied the administrative exhaustion requirement under § 3582(c)(1)(A) or may be relieved of the obligation to do so and instead turns to the merits of the pending motion.

**B.      Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

condition may warrant compassionate release, including when:

> The defendant is
>
> (I)  suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at \*10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at \*1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant argues that extraordinary and compelling reasons warranting his compassionate release exist because of the conditions at FCI Danbury related to the COVID-19 pandemic and because he suffers from high blood pressure, high cholesterol, and obesity. (Doc.

1  No. 368 at 1–2.)  Defendant also asserts that FCI Danbury:  (1) lacks social distancing measures
2  because of the dorm-style housing, (2) has inadequate screening and testing, (3) fails to
3  adequately isolate individuals who have tested positive for COVID-19, (4) has sanitation and
4  hygiene issues, (5) inadequately enforces mask usage against correctional staff and prisoners, (6)
5  has left non-virus medical needs unattended, and (7) does not provide access to doctors for
6  prisoners who do not present with a fever during sick call, or inmates who have sick call requests
7  unrelated to the virus.  (*Id.*)
8      The government counters that defendant's medical conditions—high blood pressure, high
9  cholesterol, and obesity with a BMI below 40—do not constitute extraordinary and compelling
10 reasons warranting compassionate release.  (Doc. No. 370 at 17–19.)  In particular, the
11 government contends that defendant's medical conditions neither fall within any of the
12 recognized categories listed in the Sentencing Commission's policy statement as criteria that may
13 warrant compassionate release, (*id.* at 17) (citing USSG § 1B.1.13), nor are they recognized by
14 the CDC as high-risk factors with respect to COVID-19 (*id.* at 17–18).  The government notes
15 that defendant's high blood pressure and high cholesterol are both being appropriately managed
16 by BOP, and neither are identified by CDC as high risk factors.  (*Id.* at 18–19.)  Additionally, the
17 government avers that defendant's medical records do not demonstrate that he fits within the
18 CDC's definition of severely obese, as his BMI is lower than 40.  (*Id.* at 19.)  The court notes that
19 on July 30, 2020—after the government filed its response—the CDC updated its list of risk
20 factors; high blood pressure and a BMI of 30 or above are now considered risk factors.  *See*
21 *People with Certain Medical Conditions*, Centers for Disease Control and Prevention,
22 https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-
23 conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-
24 ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last reviewed August 11, 2020).
25 Additionally, the government concedes that a chronic medical condition that has been identified
26 by the CDC as increasing a person's risk of becoming severely ill from COVID-19, "in
27 combination with the likelihood that a defendant may contract COVID-19 and suffer severe
28 /////

8

symptoms as a result—may satisfy the standard of 'extraordinary and compelling reasons.'" (Doc. No. 370 at 18.)

In light of recent developments at FCI Danbury, the court finds this to be a relatively close case as to whether defendant has satisfied his burden of showing that "extraordinary and compelling reasons" exist in his case. While defendant is not "terminally ill, or subject to a serious and unrecoverable condition that makes him unable to 'provide self-care' within a BOP facility," high blood pressure and obesity are high risk factors in connection with COVID-19. When the government filed its opposition to the pending motion on May 21, 2020, 22 prisoners and 2 staff members at FCI Danbury had been diagnosed with COVID-19, 60 prisoners and 58 staff members had recovered from the virus, and one prisoner had died. (Doc. No. 370 at 9.) As of August 17, 2020, the BOP now reports that 0 prisoners and 1 staff members at that prison are now confirmed as active COVID-19 cases. *See* https://www.bop.gov/coronavirus/ (last reviewed August 11, 2020). Thus, it appears that in the past two months, the active COVID-19 virus cases at FCI Danbury decreased significantly to the point of zero active cases among prisoners incarcerated at that prison. This development has convinced the court that the defendant's medical conditions and the fact that some of those conditions place him at higher risk of becoming seriously ill if infected by COVID-19, when considered in combination with the status of the virus outbreak at his institution of confinement, do not constitute extraordinary and compelling reasons warranting a reduction of his sentence or his immediate release.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in sentence would be consistent with the sentencing factors set forth at 18 U.S.C. § 3553(a).[5]  *See Parker*, 2020 WL 2572525, at *11.

---

[5] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most

First, as noted above, defendant is currently serving a 120-month sentence for conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine substance.  (*See* Doc. Nos. 328, 337.)  At the time of his sentencing on March 25, 2019, defendant Alfonso Esparza was held responsible for 1,075.9 grams of actual methamphetamine and for possessing a stolen firearm near the methamphetamine and drug paraphernalia.  (Doc. No. 328 at 7.)  With his early acceptance of responsibility, the U.S. Probation Office determined that the defendant's total offense level was 34, that his significant criminal history including prior drug convictions placed him in criminal history category VI, calling for a sentence of imprisonment under the advisory sentencing guidelines of between 262 to 327 months.  (*Id*. at 14.)  The probation officer recommended a low-end of the guideline range sentence of 262 months in BOP custody.  (*Id*.)  After considering the § 3553(a) factors and other matters, the undersigned varied and departed downward from the advisory guideline range and sentenced defendant to a 120-month term of imprisonment.  (Doc. No. 339.)

As noted, defendant Esparza's significant criminal history placed him in category VI of the Sentencing Guidelines.  He had suffered prior drug convictions and the case agent identified him during the investigation as a supplier of methamphetamine and a Bulldogs gang member.  (*See* Doc. No. 328 at 5, 9–11.)  In light of this background, consideration of the risk of recidivism on the part of the defendant weighs to some degree against the granting of compassionate release.  *See, e.g.*, *United States v. Drummondo-Farias*, No. 1:12-cr-001740-JMS, 2020 WL 2616119, at *6 (D. Haw. May 19, 2020) (denying compassionate release to a defendant in part because had been twice convicted of drug offenses).

In addition, the court is not persuaded that defendant has established his post–offense rehabilitation since his sentencing just a little over a year ago.  Defendant argues that while

---

effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

imprisoned at FCI Danbury, he has completed his GED. (Doc. No. 368 at 2.) While this effort is laudable, it does not appear that defendant has yet had sufficient time to complete the 500-Hour Bureau of Prisons Substance Abuse Treatment Program, which the court recommended at sentencing. (Doc. No. 339 at 2.) *Cf. Parker*, 2020 WL 2572525, at *11 (granting a defendant compassionate release in part because he demonstrated rehabilitation during his imprisonment by earning two associate degrees, participating in other continuing education courses and working as an education instructor, "suicide companion," and career services clerk) (collecting cases). Moreover, even if defendant Esparza had demonstrated his full rehabilitation since September 10, 2018, rehabilitation alone is not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

Furthermore, it appears that the granting of compassionate release to defendant Esparza would potentially create an unwarranted sentencing disparity among the defendants in this case; a case in which defendant Alonso Esparza already received a more significant downward departure/variance from the advisory guidelines when he was originally sentenced than that reflected in the sentences of his co-defendants. *See* 18 U.S.C. § 3553(a)(6).

As of the date of this order, defendant Esparza has served only 16 months of the 120-month sentence, or approximately 13 percent. *See United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 26148743, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) ("'The length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion.") (quoting *Connell*, 2020 WL 2315858, at *6). In the court's view, a further reduction of his sentence would not adequately reflect the seriousness of defendant's offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

**CONCLUSION**

Because defendant Esparza has failed to demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that his release from imprisonment at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 368) is denied without prejudice to a future motion should the circumstances relied upon above change significantly.[6]

IT IS SO ORDERED.

Dated:   **August 17, 2020**

_____
UNITED STATES DISTRICT JUDGE

---

[6] The court notes that in moving for relief, defendant Alonso Esparza has requested "a modification of his sentence this Court deems appropriate given his health condition and the current pandemic." (Doc. No. 368 at 12.)